UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON



Eastern District of Kentucky
FILED
JAN 2 4 2007
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-113-GWU

JOE WILSON, JR.,                                                   PLAINTIFF,

VS:                    <u>MEMORANDUM OPINION</u>

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT,

<u>INTRODUCTION</u>

Joe Wilson brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

<u>APPLICABLE LAW</u>

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

    1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

    2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

    3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

    4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. <u>Id</u>. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

4

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Wilson, a 53 year-old former carpenter with a "limited" education, suffered from impairments related to alcohol dependence with episodic binge drinking, a history of acute and chronic alcoholism, mixed anxiety and depression, loss of vision in the left eye, a 20 percent anterior/superior compression of T7, mild spondylosis of T5, possible degenerative disc disease at C5-C6 and C6-T1 with mild degenerative changes, mid-line disc bulge at L5-S1, possible small focal herniation, coal workers pneumoconiosis, and chronic obstructive pulmonary disease. (Tr. 669, 676). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a significant number of jobs in the national economy. (Tr. 676). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 677). The ALJ based this decision on the opinion of a vocational expert. (Tr. 675).

The time period pertinent to this appeal is very important. Wilson alleged a disability onset date of May 1, 1994 on his most recent SSI application filed on

5

February 11, 2003. (Tr. 738). The record reveals that an ALJ issued a denial decision on February 21, 2002 on an earlier SSI application.[1] (Tr. 447-459). The ALJ in the present action declined to reopen this application. (Tr. 670). Therefore, the time period relevant to this appeal runs from the February 11, 2003 filing date of the current SSI application through the December 12, 2005 date of the current administrative denial decision.[2]

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The defendant concedes that the hypothetical question presented at Wilson's most recent hearing held on November 7, 2005 did not fairly reflect the ALJ's ultimate findings in the action, but asserts that this is harmless error because these factors were presented to Vocational Expert Maureen Sinclair at the January 29, 2002 hearing. The plaintiff has not contested this argument. Therefore, the undersigned agrees that Sinclair's January, 2002 testimony can support the current denial decision.

The hypothetical question presented to Sinclair included an exertional limitation to light level work, restricted from a full range by such non-exertional limitations as (1) the need for a sit/stand option in intervals of one-hour; (2) an inability to ever climb ladders, ropes or scaffolds; (3) an inability to more than occasionally climb stairs, balance, stoop, crouch, bend, kneel, or crawl; (4) an

---

[1]The undersigned affirmed this decision on December 30, 2003. Wilson v. Barnhart, London Civ. A. No. 02-314 (E.D. Ky 2003).

[2]The proper inquiry in an application for SSI is whether the plaintiff was disabled on or after his application date. Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

6

inability to more than frequently use the upper extremities for reaching, handling, feeling, pushing or pulling as well as no constant, uninterrupted use of the upper extremities; (5) an inability to engage fine, detailed work requiring binocular vision; (6) a need to avoid exposure to heights, unprotected moving machinery, temperature extremes, excessive humidity, excessive vibrations, and pulmonary irritants such as dust, chemicals and fumes; (7) a "limited but satisfactory" ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, function independently; handle complex instructions, behave in an emotionally stable manner, and relate predictably in social situations; and (8) a "seriously limited but not precluded" ability to demonstrate reliability. (Tr. 634-636). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 639-646). Therefore, assuming that the vocational factors considered by Sinclair fairly characterized Wilson's condition, then a finding of disabled status within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error. Wilson was found capable of performing a restricted range of light level work in the administrative decision which became final on February 21, 2002. (Tr. 447-459). Principles of res judicata require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application. Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence

7

relating to such a finding..." In the present action, the ALJ specifically adopted the findings of the earlier ALJ. (Tr. 671). This action would appear appropriate.

"New and material" evidence does not indicate that Wilson's condition deteriorated during the time frame relevant to this appeal. In the time period since the February, 2002 final denial decision, Dr. Rita Ratliff (Tr. 828) and Dr. Hughes Helm (Tr. 877) each examined the plaintiff and found that he had no physical limitations. The question included a number of restrictions relating to vision and, so, appears essentially consistent with the opinion of the staff at the Minnex Eye Clinic. (Tr. 820). Such treating and examining sources of record as the staff at Mary Breckinridge Healthcare (Tr. 817-819, 840-873, 884-890) and the staff at Appalachian Regional Healthcare (Tr. 834-839) did not report the existence of more severe restrictions than those found by the ALJ. Neither Dr. James Ramsey (Tr. 880) nor Dr. Jorge Baez-Garcia (Tr. 882), the non-examining medical reviewers, thought the claimant suffered from a "severe" impairment. Thus, not only does "new and material" evidence not support Wilson's claim, but the ALJ appears to have been extremely generous in finding that medical improvement had not occurred and adopting the findings of the February, 2002 denial decision.

The Court notes that no new evidence relating to Wilson's mental condition was submitted during the relevant time period. Thus, the ALJ could properly rely upon the findings of the earlier ALJ.

Wilson asserts that the ALJ erred in failing to include among his findings the mental limitations identified by Psychologist James Leisenring in January of 1998 (Tr. 402-403) and again in July of 2001 (Tr. 569-570). Both of these opinions were issued before the relevant time period and during a time frame in which the claimant has already been properly found not to be disabled. The ALJ

8

in February of 2002 did not adopt Leisenring's mental limitations and it is too late for the plaintiff to contest this finding. As previously noted, no "new and material" evidence submitted since the earlier denial decision suggests a deterioration of the plaintiff's mental status and, so, the ALJ could properly rely upon the earlier mental limitations.

Wilson also argues that the ALJ erred in finding that he suffered from chronic alcoholism. However, the evidence dated after the February, 2002 denial decision suggests that this remains the case. In April of 2002, the plaintiff was treated at Mary Breckinridge for acute alcohol intoxication. (Tr. 817-819). The claimant was again treated at Mary Breckinridge for alcohol intoxication in January of 2003. (Tr. 843). Dr. Varghese noted chronic alcoholism in June of 2002 and again in December of 2002. (Tr. 846, 850). The plaintiff cites no "new and material" evidence suggesting that alcoholism is no longer a problem for him. Therefore, the Court must reject the claimant's argument.

Finally, Wilson asserts that the ALJ erred by failing to address the issue of whether alcoholism was a contributing factor to his disability. However, the ALJ did note that several of his mental problems would be more severe if he continued to use alcohol. (Tr. 670). Therefore, the ALJ properly made this determination.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___24___ day of January, 2007.

G. WIX UNTHANK
SENIOR JUDGE

9